1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11    EDUARDO SAUCEDA,                              Case No. 1:24-cv-01018 JLT CDB

12                                  Plaintiff,        ORDER GRANTING MOTION TO REMAND

13    v.                                              (Doc. 9)

14    FCA US LLC,

15

16                                  Defendant.

17        In this action brought under California state law, alleging breach of warranty and

18    fraudulent inducement tied to the purchase of a vehicle, Plaintiff moves to remand arguing that

19    the amount in controversy ("AIC") does not meet the jurisdictional minimum for diversity

20    jurisdiction in federal court.  (Doc. 9-1 at 9.)  For the reasons set forth below, the motion is

21    **GRANTED**.

22                              **I.    BACKGROUND**

23        On or around July 27, 2022, Plaintiff purchased a new 2022 Chrysler Pacifica to use

24    "primarily for family or household purposes."  (Doc. 1-3 at 7–8, ¶¶ 7, 9.)  Plaintiff executed a

25    Retail Installment Sales Contract ("RISC") to finance the purchase of the vehicle.  (Doc. 1-3 at

26    70–71.)  The RISC indicates that the vehicle cost the Plaintiff a total of $58,229.28.  (*Id*. at 70.)

27    Of that amount, Plaintiff agreed to finance $48,097.38 and incur $10,131.90 in finance charges.

28    (*Id*.)  In doing so, Plaintiff promised to pay $808.74 per month beginning on August 26, 2022,

1

1    and ending on July 26, 2028.  (*Id*.)  The vehicle came with a series of "warranties, including . . .

2    bumper-to-bumper warranty, powertrain warranty, and emission warranty."  (Doc. 1-3 at 7, ¶ 8;

3    *see also id*. at 23–53.)  "The warranties provided, in relevant part, that in the event of a defect . . .

4    during the warranty period, Plaintiff could deliver the Subject Vehicle for repair to Defendant's

5    representatives and the Subject Vehicle would be repaired."  (Doc. 9-1 at 6.)  During the express

6    warranty period, Plaintiff noticed "stalling defects, transmission defects, electrical defects, body

7    defects, infotainment defects; defects causing stalling; among other defects."  (Doc. 1-3 at 8,

8    ¶ 12.)  Plaintiff presented the vehicle for repairs, but Defendant "failed to service or repair the

9    Vehicle to conform to the applicable express and implied warranties."  (Doc. 1-3 at 16, ¶ 68; Doc.

10    9-1 at 7.)

11            Subsequently, Plaintiff sued the Defendant in the Superior Court of California, County of

12    Kern for breach of contract in an unlimited civil case where the amount demanded "exceeds

13    $35,000."  (Doc. 1-3 at 64.)  In his complaint, Plaintiff asserts claims for breach of warranty

14    under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), as well as claims for

15    fraudulent inducement.  (*Id*. at 15–20.)  Plaintiff argues that under the Song-Beverly Act,

16    Defendant breached its "affirmative duty to promptly offer to repurchase or replace" the vehicle

17    when "it failed to conform" to the "express warrant[ies] after [] reasonable . . . repair attempts."

18    (*Id*. at 11, ¶ 37.)  Plaintiff asserts that Defendant's conduct was "willful" because Defendant knew

19    of its inability to repair the vehicle after reasonable repair attempts, "yet . . . refused to promptly

20    replace the [v]ehicle or make restitution."  (*Id*. at 16, ¶ 64.)  Plaintiff further claims that

21    Defendant "knew that the [v]ehicle was defective but failed to disclose this fact to Plaintiff at the

22    time of sale and thereafter."  (*Id*. at 9, ¶18.)  Specifically, Plaintiff alleges Defendant knew that

23    "the 2022 Chrysler Pacifica vehicles equipped with a 9HP transmission and 3.6L engine are

24    defective, including Plaintiff's 2022 Chrysler Pacifica, and contained one or more defect(s) which

25    may result in stalling, shutting off, and/or loss of power."  (*Id*. at 8, ¶ 16.)

26            Plaintiff claims damages including "reimbursement of the price paid for the vehicle,"

27    "replacement or reimbursement," "recission of the contract," "cover damages," and "incidental

28    and consequential damages."  (Doc. 1-3 at 12, ¶ 39–43.)  The complaint also requests "damages

2

in a sum to be proven at trial in an amount that is not less than $35,001,00," (*id*. at 12, ¶ 44), and claims that "Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages." (*Id*. at 16–18, ¶¶ 64, 71, 74.) Finally, the prayer for relief asks for (1) "general, special and actual damages," (2) "restitution," (3) "diminution in value," (4) "consequential and incidental damages," (5) "punitive damages," (6) "a civil penalty in the amount of two times Plaintiff's actual damages," (7) "prejudgment interest," (8) "costs of the suit and . . . reasonable attorneys' fees," and (9) "other relief as the Court may deem proper." (*Id*. at 21.)

On August 26, 2024, Defendant removed the case to federal court under 28 U.S.C. § 1332(a)(1) arguing that the AIC exceeds $75,000 and that complete diversity exists between the parties. (Doc. 1 at 4–9.) Defendant claims Plaintiff is a citizen of California, and Defendant, as a limited liability company, is a citizen of every state where its members are citizens. (*Id*. at 8.) Its sole member, FCA North America Holdings LLC, is incorporated in Delaware and has its principal place of business in Michigan, thus complete diversity exists. (*Id*.) Defendant also claims that AIC is met because Plaintiff seeks "$40,432.74 in restitution," "$80,865.48 in civil penalties," "$40,432.74 in punitive damages," and over $25,000 in attorney's fees, totaling approximately $186,730.96 in damages. (*Id*. at 6.)

Defendant uses the RISC sales price and Plaintiff's request for an amount "not less than $35,001" to argue that actual damages reach "a minimum of $40,432.74 in restitution." (Doc. 1 at 4–6.) Included in that amount is a $12,945.13 deduction for Plaintiff's use of the vehicle prior to when the defects first manifested themselves, which turns on the date of first repair. (*Id*. at 6.) Defendant claims that the first repair occurred on April 8, 2024, at the 39,644-mile mark. (*Id*. at 6 n.1.) As to civil penalties, Defendant relies on the complaint's allegation that Plaintiff is "entitled to a civil penalty . . . two times Plaintiff's actual damages." (*Id*. at 5.) As to attorney's fees, Defendant relies on a separate Song-Beverly case where Plaintiff's counsel sought over $100,000 in attorney's fees to argue that fees "commonly exceed $25,000" in these cases. (*Id*. at 6.) Finally, as to punitive damages, Defendant offers an estimate of "at least $40,432.74," which is a one-to-one ratio between punitive and compensatory damages. (*Id*.)

On October 22, 2024, Plaintiff filed a motion to remand the case back to Kern County

3

Superior Court.  (Doc. 9.)  Plaintiff does not contest the citizenship of the parties.  (*See* Doc. 9-1.)  Instead, Plaintiff argues that his request for "an amount not less than $35,001" refers to Plaintiff's total damages.  (Doc. 9-1 at 11.)  Plaintiff further argues that the $40,432.74 figure obtained using the RISC is speculative, fails to "consider essential facts about the purchase price," (Doc. 9-1 at 13), and fails to establish "Plaintiff's actual payments under the [s]ales [c]ontract."  (Doc. 15 at 11.)  Plaintiff also contends that Defendant's deduction in damages, for Plaintiff's use of the vehicle, is speculative because Defendant chose "an arbitrary repair visit" and "fail[ed] to identify the purported defect for the alleged repair."  (Doc. 9-1 at 14.)  As to civil penalties, Plaintiff argues that the Defendant fails to prove that Plaintiff will recover the maximum penalty, (*id.* at 16), and that because the underlying damages are speculative so too is the civil penalty.  (*Id.* at 18.)  As to attorneys' fees, Plaintiff argues that the Court cannot consider attorney's fees, but even if it did, Defendant fails to offer sufficient evidence to prove Plaintiff's fee recovery.  (Doc. 9-1 at 19–20; Doc. 15 at 11–12.)  Finally, as to punitive damages, Plaintiff claims that Defendant fails to "provide any evidence, or argument, establishing a reasonable estimate of punitive damages for this matter."  (Doc. 15 at 7.)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1446, a defendant may remove a state action to federal court if "(1) the case presents a federal question or (2) there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000."  *Quinonez v. FCA US LLC*, No. 2:19-cv-2032-KJM, 2020 WL 3397565, at *2 (E.D. Cal. June 19, 2020).  A plaintiff may then challenge the removal by filing a motion to remand.  28 U.S.C. § 1447.  "[A]ny doubt about the right of removal requires resolution in favor of remand."  *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009)

Defendant removed this case based on diversity jurisdiction, (Doc. 1 at 2), and Plaintiff challenges only the jurisdictional amount, (Doc. 12-1 at 10–22).  In evaluating AIC, courts first "consider whether it is facially apparent from the complaint that the jurisdictional amount is in controversy."  *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (citations omitted).  When the plaintiff's complaint "does not contain any specific amount of

4

1    damages sought, the party seeking removal . . . bears the burden of showing, by a preponderance

2    of the evidence, that the amount in controversy exceeds the statutory amount." *Lewis v. Verizon*

3    *Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) (citations omitted).  The AIC is "an estimate

4    of the total amount in dispute, not a prospective assessment of defendant's liability." *Id.* at 400.

5        The removing party's notice of removal must include "a plausible allegation that the

6    amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating*

7    *Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  The defendant must support its jurisdictional

8    allegations with "competent proof" and cannot rely on "mere speculation . . . with unreasonable

9    assumptions." *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936);

10   *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  The court may consider the

11   complaint, the notice of removal, and the opposition to plaintiff's motion to remand.  *Quinonez*,

12   2020 WL 3397565, at *2.  The court may also consider affidavits, declarations, or other

13   "summary-judgment-type evidence relevant to the amount in controversy at the time of removal."

14   *Ibarra,* 775 F.3d at 1197 (citations omitted).

## III.    DISCUSSION

### A.    Actual Damages

#### 1.    Song-Beverly Act Claims

18       As to Plaintiff's Song-Beverly Act claims, he may recover "restitution in an amount equal

19   to the actual price paid or payable by the buyer" minus "that amount directly attributable to use

20   by the buyer prior to the time the buyer first delivered the vehicle . . . for correction of the . . .

21   nonconformity."  Cal. Civ. Code § 1793.2(d)(2)(B), (C).  The Ninth Circuit has held that this

22   reduction in damages, known as the "use offset," should be deducted from the jurisdictional

23   amount when calculating AIC.  *Schneider v. Ford Motor Co.*, 756 Fed. Appx. 699, 701 n.3 (9th

24   Cir. 2018) ("Consideration of the [u]se [o]ffset was appropriate. We have recognized that an

25   estimate of the amount in controversy must be reduced if 'a specific rule of law or measure of

26   damages limits the amount of damages recoverable.'") (citations omitted).

27       While Plaintiff requests "an amount not less than $35,001" and seeks "restitution" in his

28   complaint, (Doc. 1-3 at 12, 21), this Court holds that Defendant cannot simply rely on the

1  complaint's generic damage allegations when establishing the AIC.  *West v. FCA US LLC*, No.

2  1:24-cv-00293-JLT-CDB, 2024 WL 3298911, at *3 (E.D. Cal. 2024).  Instead, Defendant must

3  submit additional evidence, such as the purchase agreement of the vehicle, "to guide the

4  interpretation of the damages sum stated in the complaint."  *Id.*; *see also Quinonez*, 2020 WL

5  3397565, at *2–3.  Using this approach, the Court finds that the phrase in Plaintiff's complaint

6  requesting an amount "not less than $35,001" refers to actual damages.

7        Defendant attached a copy of the RISC to its notice of removal.[1]  (Doc. 1-3 at 70–71.)  As

8  such, Defendant provided evidence beyond the face of the complaint in support of removal.  As

9  the RISC indicates, the vehicle cost the Plaintiff $48,097.38, excluding $10,131.90 in finance

10  charges.  (Doc. 1-3 at 70–71.)  The closeness between the sales price ($48,097.38), or sales price

11  with finance charges ($58,229.28), and the stated sum ($35,001) serves as competent proof of

12  actual damages.  *West*, 2024 WL 3298911, at *3; *Quinonez*, 2020 WL 3397565, at *2–3 (finding

13  more likely than not that plaintiff's demand for damages "exceed[ing] $25,000" referred to actual

14  damages, no total damages, because the RISC indicated a $31,500 purchase price for the vehicle).

15  This is especially true when considering that the statutory offset will only reduce Plaintiff's total

16  recovery.  *West*, 2024 WL 3298911, at *3.  As in *Quinonez*, the Plaintiff requests "restitution,"

17  which would include recovery of around $58,229 in the form of payments already made and

18  release from plaintiff's obligations under the loan.  (Doc. 1-3 at 15); *Quinonez*, 2020 WL

19  3397565, at *3 (explaining that plaintiff could recover "$31,500 in the form of [] payments made

20  to date" and "the value of the release from her personal loan").  Thus, this amount accurately

21  reflects the actual damages at issue in this case.[2]

22  _____

23  [1]  Plaintiff does not dispute the admissibility or accuracy of the RISC, or the information contained therein, rather
only that Defendant cannot rely on the RISC alone without providing "essential facts about the purchase price," such

24  as "facts indicating how many payments had been made" under the sales contract.  (Doc. 9-1 at 13) (citations
omitted).

25  [2]  Contrary to Plaintiff's position, Defendant does not need to prove "actual payments" made under the sales contract
to establish actual damages.  (Doc. 9-1 at 13; *see also* Doc. 15 at 11).  While this is true in the contexts of leases, it is

26  not true for purchase agreements.  *West*, 2024 WL 3298911, at *5 ("In cases involving a purchase, courts have
emphasized the contrast between leases and purchases in determining actual damages calculations."); *cf. Brady v.*

27  *Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1008 (N.D. Cal. 2002) (Limiting [plaintiff's] recovery to payments
actually made is consistent with the logic and purpose of the Song-Beverly Act to make the consumer whole. . . .

28  Moreover, similar lemon laws of other states either expressly, or have been interpreted to, require restitution only of
actual lease payments made by the lessee, and does not provide, for instance, for the recovery of the full capitalized

1    Turning to the offset calculation, there must be sufficient evidence that the use offset does
2    not reduce the AIC to a level below the jurisdictional minimum.  *Villegas v. Ford Motor Co.*, No.
3    1:22-cv-01628-ADA-SAB, 2023 WL 3144540, at *7 (E.D. Cal. April 28, 2023).  This is
4    particularly true because Plaintiff requests "reimbursement of the price paid for the vehicle less
5    that amount directly attributable to use by the Plaintiff prior to the first presentation to an
6    authorized repair facility for a nonconformity."  *Id.*; (*see* Doc. 1-3 at 12, ¶ 39).  In its notice of
7    removal, Defendant included a $12,945.13 deduction for Plaintiff's use offset in its total measure
8    of restitution, (Doc. 1 at 6), and explained that this number was based on "the first attempted
9    repair" which "occurred on April 8, 2024, at 39,644 miles."  (*Id*. at 6 n.1.)  However, Defendant
10   fails to explain why the proffered offset amount is accurate.  Defendant offers no explanation for
11   why April 8, 2024, constitutes a date of material repair, includes no description of the defect
12   complained about, and provides no copy of the repair order submitted on that date.  (*See* Doc. 1 at
13   6; Doc. 1-3 at 1–3.)

14   According to the Plaintiff, the offset calculation is speculative because Defendant chose
15   "an arbitrary repair visit" and "fails to identify the purported defect for the alleged repair at the
16   [v]ehicle's 39,644 mileage mark."  (Doc. 9-1 at 14.)  Plaintiff relies on authority from the Central
17   District of California in support of this proposition, which this Court finds persuasive.  (*Id*. at 16;
18   *see also* Doc. 15 at 11.)  In those cases, remand was proper, in part, because defendant failed to
19   "adduce evidence showing why the mileage offset should be calculated based on [the first visit]
20   instead of [plaintiff's] subsequent visits to fix other complained-of defects."  *Gutierrez v. Ford*
21   *Motor Co.*, No. 2:21-cv-05679-MCS-JPR, 2021 WL 4399517, at *2 (C.D. Cal. 2021); *Jones v.*
22   *FCA US, LLC*, No. CV-22-859-JFW (GJSx), 2022 WL 1154534, at *2 (C.D. Cal. April 18, 2022)
23   ("Defendant fails to provide any factual or legal basis as to why the statutory mileage offset
24   should be based on the odometer reading the first time [p]laintiffs brought the [s]ubject [v]ehicle

25   _____

26   purchase price or current value of the lease by the lessee.").  For purchases, the sales price listed in the RISC is
     sufficient to establish actual damages under the Song-Beverly Act.  *Quinonez*, 2020 WL 3397565, at *3 ("Plaintiff's
27   focus on payments . . . mischaracterizes the amount in controversy as a 'prospective assessment of defendant's
     liability' as opposed to the 'estimate of the total amount in dispute.'"); *see also Messih v. Mercedes-Benz USA, LLC*,
28   No. 21-cv-03032-WHO, 2021 WL 2588977, at *4, 4 n.3 (N.D. Cal. June 24, 2021) (expressly rejecting plaintiff's
     argument that proof of actual payments was necessary for defendant to prevail).

1    in for repair.").  In *Gutierrez*, the record indicated that plaintiff "sought repairs . . . when the

2    odometer read 504, 5,993, 15,332, 24,634, 34,537 miles" and thus it was unclear which repair

3    visit provided the proper measure of damages.  2021 WL 4399517, at *2.  The court explained,

4    that "[i]f based on a later visit, the mileage offset would significantly diminish the measure of

5    actual damages." *Id*.

6            It is similarly unclear whether Defendant's proffered date of repair reflects the date in

7    which the first material defect manifested itself.  In his complaint, Plaintiff alleges that Defendant

8    "undertook to perform various defects repairs," (Doc. 1-3 at 14, ¶ 55), made a "reasonable

9    number of repair attempts," (Doc. 1-3 at 16, ¶ 64), and was "unable to service or repair the

10   [v]ehicle . . . after a reasonable number of opportunities."  (Doc. 1-3 at 15–16, ¶ 62.)  Plaintiff

11   also alleges that there were a multitude of defects that "manifested themselves within the . . .

12   warranty period."  (Doc. 1-3 at 8, ¶ 12.)  Based on these allegations, the Court concludes that

13   Plaintiff presented his vehicle for repairs on multiple occasions.  Yet Defendant fails to explain

14   why a mileage offset "based on the first visit," as opposed to the "second visit," or "subsequent

15   visits to fix other complained-of defects" is more appropriate.  *Gutierrez*, 2021 WL 4399517, at

16   *2.  Defendant does not describe the defect presented on April 8, 2024, or explain whether such

17   defect is one covered by the contract's express and implied warranties.  (*See* Doc. 1-3 at 23–41);

18   *see also* Cal. Civ. Code § 1791.1(a).

19           Defendant thus fails to prove the offset deduction by a preponderance of evidence.[3]

---

20   [3]  In cases where this Court has accepted the defendant's offset calculation, it has done so when the amount was
21   uncontested, or when the defendant submitted proof of the date of first material repair.  *See e.g., Fang v. Ford Motor
     Co.*, No. 1:22-cv-0561-JLT-SAB, 2022 WL 3444715, at *6 (E.D. Cal. Aug. 17, 2022) (accepting defendant's offset
     calculation because the "[p]laintiffs d[id] not dispute the accuracy of this calculation"); *Villegas*, 2023 WL 3144540,
22   at *8 (accepting defendant's offset calculation for establishing AIC because defendant offered "a pointed calculation
     based on evidence of the service records pertaining to the [s]ubject [v]ehicle"); *Cabrera v. FCA US LLC*, No. 1:22-
23   cv-00431-NODJ-BAM, 2023 WL 8477970, at *2 (E.D. Cal. Dec. 7, 2023) (accepting defendant's offset calculation,
     which included a copy of the repair order indicating the date of repair, odometer count, and alleged defect).  As such,
24   this Court rejects Defendant's proffered offset amount because Defendant entirely fails to describe the defect that
     prompted Plaintiff's visit on April 8, 2024, (Doc. 1 at 6 n.1), and Plaintiff clearly challenges the offset calculation as
25   speculative, (Doc. 9-1 at 14).  While in one instance, a judge in the Eastern District of California accepted
     defendant's offset calculation based solely on the "assumption" that plaintiff had driven the vehicle for 4,500 miles
26   prior to presenting the vehicle for material repairs, that case is distinguishable.  *Cf. Cortez Martinez v. Ford Motor
     Company*, No. 1:18-cv-01607-LJO-JLT, 2019 WL 1988398, at *4–5 (E.D. Cal. May 6, 2019) (finding that
27   defendant's offset calculation was "not speculative" because it was based on a reasonable estimate of the maximum
     miles plaintiff could have driven while still being covered by the implied warranty).  That case relied entirely on the
28   outer limits of the implied warranty of merchantability for used vehicles, which is three months.  *Id*. at *4; *see also*
     Cal. Civ. Code § 1795.5(c).  Here, Plaintiff purchased a new vehicle, which has a one-year implied warranty

1  *Lewis*, 627 F.3d at 397; *McNutt*, 298 U.S. at 189 ("If his allegations of jurisdictional facts are

2  challenged by his adversary . . . he must support them by competent proof.").  Absent these

3  details, the Court cannot reasonably determine whether the use offset reduces the AIC to a level

4  below the jurisdictional minimum.  Accordingly, Defendant fails to prove actual damages as to

5  Plaintiff's Song-Beverly claims.

6              2.    Fraud Claims

7        Turning to Plaintiff's fraud claims, "[i]t is reasonable to use the purchase price as a

8  measurement of actual damages."  *Massey v. FCA US LLC*, No. 1:21-cv-01392-NODJ-CDB,

9  2023 WL 8477945, at *2 (E.D. Cal. Dec. 7, 2023).  In *Massey*, this Court found that AIC was met

10 based, in part, on the actual damages tied to the fraud claim.  *Id*.  While plaintiff similarly argued

11 that defendant failed to "justif[y] its decision to use 26,512 miles" as opposed to a "larger milage

12 figure" which would render a higher mileage offset deduction, this Court found it was "not

13 necessary to resolve this dispute."  *Id*.  This Court explained that because plaintiff "also asserts a

14 claim for fraud" and "does not rely solely on the Song-Beverly Act," the Court could rely on the

15 purchase price as an accurate "measurement of actual damages for her fraud claim."  *Id*.  As such,

16 so long as the defendant "can show that other remedies in dispute exceed" the difference between

17 $75,001 and the purchase price, then defendant "will have satisfied its obligation to show the

18 amount in controversy exceeds the jurisdictional minimum."  *Id* (explaining that AIC was met

19 because defendant showed that attorney's fees and civil penalties reached a minimum of

20 $35,113.08, which was the difference between $75,001 and the vehicle's purchase price of

21 $39,887.92).

22       Plaintiff purchased the subject vehicle for a total of $58,229.28.  (Doc. 1-3 at 70.)  The

23 difference between $75,001 and $58,229 is $16,772.  Accordingly, so long as Defendant proves

24 by a preponderance of evidence that the remaining remedies reach $16,772, the AIC is met.

25 *Massey*, 2023 WL 8477945, at *2.

26 ///

27

28 coverage period.  *See* Cal. Civ. Code § 1791.1(c); (Doc. 1-3 at 70).  Further, the Court cannot rely on the "outer limits" of the implied warranty alone because Plaintiff asserts claims under both express and implied warranties, each with differing coverage periods.  (Doc. 1-3 at 15–19.)

1    **B.    Civil Penalties**

2        The Song-Beverly Act provides that a buyer may recover "a civil penalty of up to two

3    times the amount of damages" if the manufacturer or seller "willfully" violated a warranty or

4    provision of the Act.  Cal. Civ. Code § 1794(c); *see also Ramos v. FCA US LLC*, 385 F. Supp. 3d

5    1056, 1070–71 (E.D. Cal. 2019) (explaining that civil penalties may be imposed for the willful

6    failure of "vehicle manufacturers to promptly replace or pay restitution for their lemon vehicles").

7    Generally, this civil penalty is properly included in determining the amount in controversy, as

8    "the civil penalty under the Song-Beverly Act is akin to punitive damages, because both have the

9    dual effect of punishment and deterrence for defendants." *Brady*, 243 F. Supp. 2d at 1008;

10   *Hernandez*, 2022 WL 819857, at *4.  However, "[i]f the amount of actual damages is speculative,

11   [] an attempt to determine the civil penalty is equally uncertain." *West*, 2024 WL 3298911, at *6

12   (citations omitted).

13       Plaintiff alleged that Defendant's "failure to comply with its obligations under Civil Code

14   section 1793.2, subdivision (d) was willful, in that Defendant . . . [was] aware that [it was] unable

15   to service or repair the [v]ehicle to conform to the . . . warranties after a reasonable number of

16   repair attempts."  (Doc. 1-3 at 16, ¶ 64.)  Plaintiff claims that this entitles him to "a civil penalty

17   of two times Plaintiff's actual damages" and reiterates this in the prayer for relief.  (*Id.*; Doc. 1-3

18   at 21.)  This Court and others previously determined that when, as here, a plaintiff alleges that

19   Defendant's conduct was willful and the prayer for relief includes a request for civil penalties "in

20   an amount not to exceed two times the amount of Plaintiff's actual damages," inclusion of civil

21   penalties in the AIC is appropriate.  *See, e.g., Quinonez*, 2020 WL 339756, at *3; *Cortez

22   Martinez*, 2019 WL 1988398, at *7 (where the plaintiff alleged that defendant's failure to comply

23   with the Song-Beverly Act was willful and the prayer for civil penalty in an amount two times

24   actual damages, the civil penalties were "expressly placed in controversy by the complaint").

25       Because Plaintiff clearly pled that Defendant acted willfully in failing to comply with the

26   Song-Beverly Act, and the prayer for relief asks for double the number of actual damages, this

27   specific amount was placed in controversy.[4]  *Hernandez*, 2022 WL 819857, at *5; *see also Fang*,

28

---

[4] Contrary to Plaintiff's assertion, Defendant is not required to present evidence that it willfully violated the Song-

10

1    2022 WL 3444715, at *8.  However, as Plaintiff notes, because the number of actual damages is

2    uncertain, the number of civil penalties is equally uncertain.  (Doc. 9-1 at 18–19); *West*, 2024 WL

3    3298911, at *6 ("Because [d]efendant did not establish the amount of actual damages by a

4    preponderance of the evidence, the amount of civil penalties is equally uncertain."); *Newsome*,

5    2022 WL 408631 at *5.  As explained above, Defendant's estimated sum of actual damages is

6    speculative because the use offset calculation relies on unsupported claims regarding the date of

7    first repair.  Defendant therefore failed to satisfy its burden of proof required to include civil

8    penalties in the jurisdictional amount.  *West*, 2024 WL 3298911, at *6.

9         **C.    Attorney's Fees**

10        Under the Song-Beverly Act, if the buyer prevails in the action, "the buyer shall be

11   allowed to recover as part of the judgment a sum equal to the aggregate amount of costs and

12   expenses, including attorney's fees based on actual time expended."  Cal. Civ. Code § 1794(d).

13   Plaintiff argues that this Court should not consider attorney's fees in calculating the AIC due to

14   the "split in authority" across district courts in the Ninth Circuit.  (Doc. 15 at 11–12.)  However,

15   this Court has repeatedly considered attorney's fees when calculating the AIC.  *See e.g.*, *Cortez*

16   *Martinez*, 2019 WL 1988398, at *7 ("An award of attorneys' fees may be considered in

17   calculating the amount in controversy."); *Newsome*, 2022 WL 408631, at *5–6; *West*, 2024 WL

18   3298911, at *6–7.  Relying on Ninth Circuit precedent, this Court explained that district courts

---

19   Beverly Act to include civil penalties in the damage's calculation.  (Doc. 9-1 at 16–18.)  Plaintiff cites a series of

20   cases—none from the Eastern District of California—which require "some showing regarding the possibility of civil damages" apart from relying on a plaintiff's boilerplate allegations in the complaint.  *E.g.*, *Savall*, 2021 WL 1661051,

21   at *3 (S.D. Cal. Apr. 28, 2021) (rejecting the inclusion of the full civil penalty amount in the AIC because "[o]ther than referring to Plaintiff's allegation that FCA acted willfully . . . FCA provides no support for the likelihood that a civil penalty based on its willfulness would actually be awarded"); *Echemendia*, 2020 WL 7311348, at *2 (C.D. Cal.

22   Dec. 11, 2020) ("[Defendant] cites no allegations suggesting the type of willfulness required to justify civil penalties, let alone has it demonstrated how much those penalties might be.").  Such cases are not controlling, nor do they

23   reflect how this Court has approached the issue.  *See e.g.*, *Cabrera*, 2023 WL 8477970, at *2 ("This court has determined that when a plaintiff both alleges that a defendant's violations of the Song-Beverly Act are willful and

24   requests a civil penalty, the court must assume the amount in controversy includes the full civil penalty).  Instead, this Court has found that such evidence is not necessary on removal because "Defendant is not required to prove the case

25   against itself."  *Fang*, 2022 WL 3444715, at *7 (citations omitted); *see also Hernandez*, 2022 WL 819857, at *5 (allowing the inclusion of civil penalties in the AIC based solely on plaintiff's request for twice the number of actual

26   damages and plaintiff's allegation that defendant's conduct was willful).  *Fang* explained that a defendant must only show by a preponderance of evidence that the complaint seeks the maximum civil penalty authorized by the Song-

27   Beverly Act, not that plaintiff will actually receive it.  *Fang*, 2022 WL 3444715, at *7 (citations and quotations omitted).  "It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with

28   the Song-Beverly Act, given that most defendants . . . will deny that it willfully failed to comply . . ."  *Id* (citations omitted).  Thus, Plaintiff's argument fails on this front.

11

1  are free to include future attorney's fees awards when determining the AIC. *Newsome*, 2022 WL

2  408631, at *5 (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir.

3  2018)). However, district courts may also exclude such awards if they are "too speculative" or if

4  the defendant fails to prove by a preponderance of evidence that the AIC exceeds the

5  jurisdictional threshold. *Id.; Fritsch*, 899 F.3d at 795.

6       To that end, Plaintiff contends that Defendant fails to meet its burden of proving

7  Plaintiff's projected fee recovery for the AIC. (Doc. 9-1 at 19–20.) In establishing attorney's

8  fees, Defendant's counsel points to his experience, and a separate Song-Beverly case where

9  Plaintiff's counsel sought over $100,000 in attorney's fees to argue that fees "commonly exceed

10 $25,000" in these types of cases. (Doc. 1 at 6–7; Doc. 1-3 at 3.) According to Plaintiff,

11 Defendant's reliance on such evidence is "insufficient" because it offers no insight into the "facts

12 . . . of *this* case" or the "value of attorneys' fees Plaintiff is expected to incur." (Doc. 9-1 at 20–

13 21.) The Court agrees with Plaintiff—none of the evidence supports Defendants' theory that

14 attorneys' fees amount to more than $25,000. A declaration stating that in the defense counsel's

15 "experience litigating such cases, claims for attorneys' fees through litigation commonly exceed

16 $25,000" is insufficient to prove attorney's fees for AIC. *See Hernandez*, 2022 WL 819857, at

17 *5–6 (rejecting the very same assertion regarding counsel's "experience litigating such cases" as

18 "lack[ing] the evidentiary support that may allow for the inclusion of fees"). "Defendant's lump

19 sum estimate does not delineate the amount of time major tasks will take or approximate the

20 hourly billing rate." *Newsome*, 2022 WL 408631, at *6.

21      Furthermore, Defendant's reliance on the $108,135.31 fee sought by Plaintiff's counsel in

22 another Song-Beverly case, (Doc. 1-3 at 3, 73–74), does not prove by the preponderance of

23 evidence what the future fees will be in *this* case. *See West*, 2024 WL 3298911, at *6 (rejecting a

24 similar assertion, where defendant claimed that attorneys' fees exceeded $65,00 based on

25 plaintiff's counsel's "regular request [for] more than $65,000 in fees" in Song-Beverly cases). As

26 *Schneider* best explained:

27           Defendants fail to explain how that case accords with this case. All
             that Defendants claim is that the same counsel appears in each case
28           and that the subject-matter of the cases are the same. They do not,

12

1

2

however, compare or contrast the litigation strategies or the litigation
timelines of the two cases.

3

*Schneider v. Ford Motor Co.*, 441 F. Supp. 3d 909, 914 (N.D. Cal. 2021). Defendant's counsel

4

fails to explain how the case he cites is analogous to the present case. (Doc. 1-3 at 3.) Defendant

5

merely states that the case is "a very similar matter" and that plaintiff's counsel sought over

6

$100,000 "prior to the case even reaching trial." (*Id.*) However, Defendant fails to acknowledge

7

that such case went through discovery, "numerous meet and confer conferences," "a motion to

8

compel" and was not settled until the "eve of trial" after "substantial litigation" had been

9

conducted. (Doc. 1-3 at 78–79.) Therefore, Defendant's bare comparison to a separate "similar"

10

case fails to establish the estimated attorney's fees in this case. Nor does it meet the threshold of

11

evidentiary support that typically allows for the inclusion of fees. *Cf. Cortez Martinez*, 2019 WL

12

1988398, at *7 (including attorney's fees in the AIC where defendant submitted "five petitions

13

for attorneys' fees filed in other similar cases by the same counsel"). In sum, the Court rejects the

14

inclusion of Defendant's $25,000 estimate of attorney's fees to form part of the AIC.

15

### D.    Punitive Damages

16

In determining the AIC for Song-Beverly cases involving claims of fraud, some courts

17

have included punitive damages in the total measure of damages. *See Amavizca v. Nissan N. Am.,*

18

*Inc.*, No. CV22-02256 JAK (KK), 2023 WL 3020489, at *10–11 (C.D. Cal. April 19, 2023);

19

*Cassi v. General Motors, LLC*, No. 2:23-cv-01801 WBS JDP, 2023 WL 7168348, at *2 (E.D.

20

Cal. Oct. 31, 2023). "It is well established that punitive damages are part of the amount in

21

controversy in a civil action." *Amavizca*, 2023 WL 3020489, at *10 (citing *Gibson v. Chrysler*

22

*Corp.*, 261 F.3d 927, 945 (9th Cir. 2001)). The defendant "may introduce evidence of jury

23

verdicts in cases involving analogous facts to establish probable punitive damages." *Cassi*, 2023

24

WL 7168348, at *2 (citing *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).

25

The court may also look to allegations of fraud in the complaint to assess "a pattern or practice of

26

misconduct" that if established, would result in "substantial punitive damages." *Amavizca*, 2023

27

WL 3020489, at *11.

28

Moreover, California courts have "collapse[d] any state-law limits into the constitutional

analysis" and "have recognized that 'the ratio should generally be no higher than four to one and almost never nine to one.'" *Amavizca*, 2023 WL 3020489, at *11 (citing *Tilkey v. Allstate Ins. Co.*, 56 Cal. App. 5th 521, 561 (2020). They have further recognized that "a lesser ratio is appropriate when compensatory damages are substantial, when only one reprehensibility factor is present, or when the compensatory damages award appears to contain a punitive element." *Id* (citing *Contreras-Velazquez v. Fam. Health Centers of San Diego, Inc.*, 62 Cal. App. 5th 88, 108 (2021)). Specifically, California courts have held that a "[one-to-one] ratio of punitive to compensatory damages can in some cases—or perhaps in many cases where the compensatory damages award is substantial—be the constitutional maximum." *Id* (citing *Contreras-Velazquez*, 62 Cal. App. 5th at 109)).

Defendant claims that Plaintiff seeks "at least $40,432.74 in punitive damages," but fails to explain how it obtained that number and thereby fails to meet its burden of proof upon removal. (Doc. 1 at 6; *see also* Doc. 14 at 3.) Defendant fails to include any evidence of analogous cases or jury verdicts in similar cases to establish probable punitive damages in this case. (*See* Doc. 1 at 5–6; Doc. 1-3). In *Cassi*, the Court accepted defendant's claims regarding punitive damages for establishing AIC because defendant offered "analogous cases where punitive damages exceeded $50,000." *Cassi*, 2023 WL 7168348, *2. Similarly, in *Amavizca*, the court held that defendant established $20,873.89 in punitive damages, in part, because defendant "incorporated by reference the discussion of three jury verdicts." 2023 WL 3020489, at *11. In all three cases, "an auto manufacturer was sued for concealing damage, or in one case, a transmission defect, that affected a vehicle purchased by the plaintiffs" and "awards of $50,000, $150,000, and $175,000 were upheld on appeal." *Id*. In reaching its holding, the court also relied on plaintiff's allegations of fraud in the complaint showing "a pattern or practice of misconduct." *Id*. However, it did not rely exclusively on the allegations in the complaint but rather explained that defendant's reference to similar cases "reinforce[d] the conclusion that [defendant] has shown, by a preponderance of the evidence, that punitive damages contribute at least $20,873.89 to the amount in controversy. *Id*.

Though there are various allegations of fraud in the complaint, (Doc. 1-3 at 8–11),

14

Defendant nonetheless fails to offer any evidence or "reinforce[] the conclusion" that $40,432.74 in punitive damages is warranted in this case.  (Doc. 1 at 6); *Amavizca*, 2023 WL 3020489, at *11.  This Court notes that $40,432 is the exact sum of Defendant's alleged restitution amount, (Doc. 1 at 6), which means that the proffered sum is a one-to-one ratio of punitive to compensatory damages.  However, as *Amavizca* explains, the one-to-one ratio can, in some cases, serve as the "constitutional maximum" and there is "no fixed formula that requires a court to set punitive damages equal to compensatory damages whenever compensatory damages are substantial."  2023 WL 3020489, at *11 (citing *Contreras-Velazquez*, 62 Cal. App. 5th at 109). In other words, even considering Plaintiff's allegations of fraud, Defendant offers no evidence to prove that Plaintiff would receive the constitutional maximum, or the equivalent of compensatory damages, in this instance. [5]  *Id.*; *see also Conrad Assocs. v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1200–1201 (N.D. Cal. 1998) (explaining that, in the context of insurance bad faith claims, defendant's burden upon removal "cannot be met simply by pointing out that the complaint seeks punitive damages and that any damages awarded under such a claim *could* total a large sum of money").  Thus, Defendant fails to prove punitive damages for AIC by a preponderance of evidence.

## IV.    CONCLUSION AND ORDER

Without sufficient evidence to calculate the use offset, Defendant's estimated actual damages as to Plaintiff's Song-Beverly claims are uncertain, thereby rendering the number of civil penalties equally uncertain.  Defendant also fails to prove punitive damages as to Plaintiff's

---

[5] Defendant cites the Central District of California to argue that it need not "pinpoint an amount of punitive damages" in instances where Plaintiff's Song-Beverly claims fall short of the AIC threshold, because such "shortfall would not be great and is easily made up by punitive damages available through the fraud claim."  (Doc. 1 at 5); *see In re Ford Motor Co. DPS6 Powershift Transmission Products Liab. Litig.*, No. 18-ML-02814 AB (FFMX), 2018 WL 5905942, at *4 (C.D. Cal. Sept. 10, 2018).  However, as explained above, this is not an instance where Plaintiff's Song-Beverly claims fall short of the AIC threshold, but rather an instance where Defendant fails to prove AIC by the preponderance of the evidence.  Moreover, *In re Ford Motor Co.*, the court also assessed analogous state court cases, "which alleged the same claims based on an allegedly defective DPS6 transmission."  2018 WL 5905942, at *4.  The court explained that because in those cases, plaintiff's counsel "calculate[ed] punitive damages to be [nine] times the restitutionary amount" and "the jury awarded punitive damages of $500,000," such evidence was sufficient to prove punitive damages for AIC in the instant case.  *Id* ("Given that these cases are nearly identical to the cases before this Court, the Court finds that this evidence establishes by a preponderance that the punitive damages claim is sufficient to at least make up any difference between the compensatory damages and attorneys' fees put in issue by the Song-Beverly claims, and the $75,000 jurisdictional threshold.").  Here, Defendant fails to provide analogous cases for this Court to determine the accuracy of its estimated punitive damage award and thus fails to prove AIC for removal.

1  fraud claims and the estimated number of attorneys' fees by the preponderance of the evidence.

2  Accordingly, Defendant has not met its burden of proving AIC for diversity jurisdiction upon

3  removal.  For the reasons set forth above, the Court **ORDERS**:

4       1.  Plaintiff's motion to remand (Doc. 9) under 28 U.S.C. § 1447(c) is **GRANTED**.

5       2.  The Clerk of Court is directed to remand this case to the Kern County Superior Court.

IT IS SO ORDERED.

Dated:   **October 31, 2025**

UNITED STATES DISTRICT JUDGE